UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-cr-20731-KMM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LEONARDO ANCHICO JIMENEZ,

    Defendant.

_____

**DEFENDANT'S OBJECTIONS**
**TO THE PRESENTENCE INVESTIGATION REPORT**

    The Defendant, LEONARDO ANCHICO JIMENEZ, by and through his undersigned attorney, respectfully files his objections to the Presentence Investigation Report (PSR) [DE 46] filed on January 10, 2020, as follows:

    1.    On December 5, 2019, Mr. Anchico Jimenez pled guilty to Count 1 of the Indictment [DE 10], which charged him – in essence – with conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a)(1) and 46 U.S.C. § 70506 (b).

    2.    Mr. Anchico Jimenez' sentencing hearing is scheduled for February 20, 2020.

    3.    Mr. Anchico Jimenez objects to the Probation Officer's failure to recommend that he receive a downward, two level "minor role" adjustment under Section 3B1.2 of the U.S. Sentencing Guidelines (USSG).

    4.    Mr. Anchico Jimenez also objects to the Probation Officer's recommendation that a two level enhancement is applicable under USSG § 2D1.1(b)(3)(B) (merely because a semi-

Page **1** of **9**

submersible was involved in this incident).

### Failure to Recommend a Minor Role Adjustment.

5.      The Probation Officer set forth the following statement at paragraph 14 of the PSR [DE 46] as to why she declined to recommend a "minor role" adjustment: "*They are all responsible for 1,140 kilograms of cocaine. There has been no evidence provided to suggest either defendant supervised or managed the others; therefore, neither an aggravating nor mitigating role adjustment, pursuant to § 3B1.1 or 3B1.2, is recommended for any of the defendants*."

6.      The Probation Officer's election not to recommend a "minor role" adjustment contradicts the statement made by co-defendant Wilmar Caicedo Portocarrero that he was the captain of the vessel[1] and that Mr. Anchico Jimenez was a mere crewmember, as acknowledged by the Probation Officer in that same paragraph 14: "*Wilmar Caicedo Portocarrero identified himself as the captain of the semi-submersible vessel, on which **Leonardo Anchico Jimenez** and Hevert Godoy Benalcazar were crew members…*" (Bold emphasis ours).

7.      The Probation Officer's statement that there is no evidence that established a criminal hierarchy here also contradicts the facts that she elicited from Mr. Anchico Jimenez, which cannot be ignored by considering them in a vacuum, or by not taking them into consideration at all: That Mr. Anchico Jimenez is a poor fisherman who had to support his family on the equivalent of $30 per day on the days he was able to find work.

8.      That fact has not been contradicted by the government and when viewed in its proper context can only lead one to the conclusion that Mr. Anchico Jimenez could not

---

1 (See PSR, ¶ 10: "The boarding team conducted routine questioning, during which time Portocarrero identified himself as the master of the vessel…").

realistically have had the financial wherewithal to obtain 1,140 kilos of cocaine, a submersible vessel, fuel, GPS units, and other supplies needed to make the voyage that he and his co-defendants were expected to undertake. Indeed, when he was detained by the Coast Guard, Mr. Anchico Jimenez had virtually no money with him. Thus, it is inescapable that Mr. Anchico Jimenez was nothing more than "the bottom man" on this criminal Totem pole.

9. Based on Defendant's debriefing, as well as on the debriefings of the other co-defendants, the government knows that there are many other individuals involved.

10. There are individuals who constructed and provided the vessel; others who provided the cocaine; others that loaded the cocaine and supplies onto the vessel; other individuals that off loaded the vessel; and finally the owners and masterminds of the organization.

11. Thus, it is obvious that many other individuals were involved in the criminal hierarchy that set up this trip and that the co-defendants were recruited by others who provided the vessel, the cocaine, the fuel, payment and everything else needed to transport the cocaine.

12. Mr. Anchico Jimenez and the co-defendants were obvious pawns at the mercy of the drug lords who stood to profit greatly from the voyage, or to lose a great deal of money if – as was the case here – the vessel never made it to its destination for any reason.

13. Therefore, the foregoing statements corroborate Mr. Anchico Jimenez' position that had the most minimal role here.

14. Indeed, Mr. Anchico Jimenez' role was that of a mere crew member.

15. Such a role was further corroborated in the U.S. Coast Guard (USCG) Law Enforcement Case Package provided by the government in Discovery, which lists Mr. Anchico

**Donet, McMillan & Trontz, P.A.**
Attorneys at Law
Suite 406, Continental Plaza, 3250 Mary Street, Coconut Grove, FL 33133
• Phone 305-444-0030 • Fax 305-444-0039 •
www.dmt-law.com

Jimenez as a crew member and lists co-defendant Portocarrero as the person in charge (PIC)." (See Bates No. 006 & 008 of the USCG **LAW ENFORCEMENT CASE PACKAGE CHECKLIST** attached hereto and incorporated herein as Exhibit "A").

16.   As the probation officer recognizes in her report, Mr. Anchico Jimenez has a three-month-old daughter whom he supported financially until his arrest; he has no substantial assets; no skills or special training; and worked as a fisherman, earning the equivalent of $30 per day when he could find employment. (See PSR [DE 46], ¶ 50).

17.   Section 3B1.2 (b) of the United States Sentencing Guidelines (2015) authorizes a "minor role" adjustment for a defendant who is a minor participant in the criminal activity.

18.   Application Note 3 (A) to USSG §3B1.2 instructs that:

> *This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity.*
> (Italics in the original).

19.   Application Note 3 (A) to USSG §3B1.2 provides a non-exhaustive list of factors to be considered: (i) The degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of authority; (iv) the nature and the extent of the defendant's participation in the commission of the criminal activity, including the acts that the defendant performed and the responsibility and discretion the defendant had in performing those acts; and (v) the degree to which the defendant stood to benefit from the criminal activity. The Note adds that:

> *For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.*

Page **4** of **9**

**Donet, McMillan & Trontz, P.A.**
Attorneys at Law
Suite 406, Continental Plaza, 3250 Mary Street, Coconut Grove, FL 33133
• Phone 305-444-0030 • Fax 305-444-0039 •
www.dmt-law.com

> *The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.*
> (Italics in the original).

20.  Significantly, this Application Note, under the heading: "<u>*Substantially Less Culpable Than the Average Participant*</u>," indicates further that:

> *For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline.*
> (Italics and emphasis in the original).

21.  In ***United States v. De Varon***, 175 F.3d 930 (11th Cir. 1999), the Court held that:

> [A] district court's ultimate determination of the defendant's role in the offense should be informed by two principles discerned from the Guidelines: first, the defendant's role in the relevant conduct for which she has been held accountable at sentencing, and, second, her role as compared to that of other participants in her relevant conduct. ***Id.*** at 940.

22.  Here, the PSR fails to recognize the distinctions in levels of culpability among the individuals involved in this entire operation just because they are NOT defendants in this case. For example, according to the foregoing Application Notes, a defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant. Indeed, the PSR and the Discovery in this case, as set forth above, clearly show that Mr. Anchico Jimenez performed one of the most minimal roles in this criminal activity and had no knowledge or understanding of the criminal enterprise or the activities of others. Moreover, he had no financial interest in the drugs, save for the small sum that he was presumably paid to help transport the drugs to their final destination.

23.  For the foregoing reasons, Mr. Anchico Jimenez respectfully requests that this

**Donet, McMillan & Trontz, P.A.**
Attorneys at Law
Suite 406, Continental Plaza, 3250 Mary Street, Coconut Grove, FL 33133
• Phone 305-444-0030 • Fax 305-444-0039 •
www.dmt-law.com

Honorable Court grant him a 2-level mitigating role adjustment as a minor participant pursuant to USSG §3B1.2 (b).

### Error in Calling For a Two Level Enhancement Under USSG § 2D1.1(b)(3).

24.     The Probation Officer set forth the following statement at paragraph 20 of the PSR [DE 46] as to why she recommended a two level enhancement under USSG § 2D1.1(b)(3):

> "*20. Because the defendant unlawfully <u>imported or exported</u> a controlled substance under circumstances in which a submersible vessel or semi-submersible vessel as described in 18 U.S.C. § 2285 was used, the offense level is increased by two levels, § 2D1.1(b)(3)(B).*" (Underlined emphasis ours).

25.     This enhancement is inapplicable to this case because the Defendant was <u>not</u> charged with <u>importation or exportation</u> of a controlled substance. Instead, Defendant plead guilty to Count 1 of the Indictment [DE 10] which charged him with "conspiracy to possess with intent to distribute a controlled substance… involving five (5) kilograms or more of… a detectable amount of cocaine…"

26.     In a case in which a defendant argued that no evidence connected his offenses with the importation of methamphetamines, the Eleventh Circuit Court of Appeals in ***United States v. Perez-Oliveros***, 479 F.3d 779 (11th Cir. 2007), affirmed the conviction and sentence of Perez-Oliveros (Perez), holding that [under the circumstances of that case] Perez was indeed involved in the importation of the methamphetamine. ***Id.***

27.     In so ruling, the Court noted that, even though the truck Perez was driving when he was arrested had already crossed the border from Mexico into the United States at Laredo, Texas, and that Perez had not met the truck until it was already in U.S. territory at San Antonio, Texas, some fourteen hours before Perez was pulled over in Mobile, Alabama, Perez had read USSG § 2D1.1(b)(4) too narrowly when he argued that the government had presented no

**Donet, McMillan & Trontz, P.A.**
Attorneys at Law
Suite 406, Continental Plaza, 3250 Mary Street, Coconut Grove, FL 33133
• Phone 305-444-0030 • Fax 305-444-0039 •
www.dmt-law.com

evidence demonstrating his participation in the drugs' border crossing or in arranging for their entry. *Id.* at 784.

28.     The Court explained that under Perez' interpretation, § 2D1.1(b)(4) would apply to only those defendants who themselves transport methamphetamine across the border and that if the Sentencing Commission intended such a limited application, it would have used the language it used in a prior subsection, which applies a separate enhancement only "[i]f the defendant unlawfully imported or exported a controlled substance" under certain circumstances. *Id.* In other words, the Court referred to the specific USSG Section that the Probation Officer points to here to suggest the two level enhancement.

29.     The Court added in *Perez* that "Faced with the Sentencing Commission's deliberate choice of the more inclusive language '*involved the importation*,' [in § 2D1.1(b)(4), applicable to Perez] we give the enhancement a broader reading than does Perez." *Id.* at 784.

30.     Defendant would therefore argue that the language of USSG § 2D1.1(b)(3)(B) is less inclusive and therefore more restrictive than that which Perez faced in § 2D1.1(b)(4) and the government would have to show here that Mr. Anchico Jimenez directly imported or exported cocaine into the United States.

31.     Moreover, an important fact in *Perez* that is absent here is that Perez was completing the last leg – within the United States – of a shipment that began in Mexico and was already in U.S. territory when Perez was detained. By contrast, Mr. Anchico Jimenez was a crew member on a boat that left from Colombia and had a destination of Guatemala when it was intercepted by the U.S. Coast Guard in the Pacific Ocean, thousands of miles from the United

**Donet, McMillan & Trontz, P.A.**
Attorneys at Law
Suite 406, Continental Plaza, 3250 Mary Street, Coconut Grove, FL 33133
• Phone 305-444-0030 • Fax 305-444-0039 •
www.dmt-law.com

States border.[2]

32. "When the government seeks to apply an enhancement under the Sentencing Guidelines over a defendant's factual objection, it has the burden of introducing 'sufficient and reliable' evidence to prove the necessary facts by a preponderance of the evidence. *See, e.g., United States v. Perez-Oliveros*, 479 F.3d 779, 783 (11th Cir. 2007). **United States v. Washington**, 714 F.3d 1358, 1361 (11th Cir. 2013).

33. For the foregoing reasons, Mr. Anchico Jimenez respectfully requests that this Honorable Court deny the requested two level enhancement sought at paragraph 20 of the PSR.

**WHEREFORE**, for the foregoing reasons, Mr. Anchico Jimenez respectfully requests that the Court sustain his objections to the PSR and sentence him to a reasonable sentence that takes the totality of the sentencing factors set forth in 18 U.S.C. §3553 into account.

**DATED:**  January 24, 2020.

    Respectfully submitted,

    **Donet, McMillan & Trontz, P.A.**

By: /s/ David A. Donet, Jr.
    David A. Donet, Jr., Esq.
    Attorney for Mr. Anchico Jimenez

[Certificate of Service on next page]

---

[2] PSR ¶ 8: "*According to the government's investigation, on October 15, 2019, the United States Government Marine Patrol Aircraft detected a self-propelled semisubmersible (SPSS) approximately 180 nautical miles south of the Costa Rican/Panamanian border in international waters.*"

Page **8** of **9**

**Donet, McMillan & Trontz, P.A.**
Attorneys at Law
Suite 406, Continental Plaza, 3250 Mary Street, Coconut Grove, FL 33133
• Phone 305-444-0030 • Fax 305-444-0039 •
www.dmt-law.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 24, 2020, the undersigned electronically filed the foregoing Defendant's Objections to the Presentence Investigation Report with the Clerk of the Court using CM/ECF.

           **Donet, McMillan & Trontz, P.A.**

         By: /s/ David A. Donet, Jr.
           David A. Donet, Jr., Esq.
           Florida Bar No.: 129810
           Attorney for Mr. Anchico Jimenez
           3250 Mary Street, Suite 406
           Miami, Florida 33131
           Telephone: (305) 444-0030
           Fax: (305) 444-0039
           Email: donet@dmt-law.com
           Email: paralegals@dmt-law.com

Page **9** of **9**

**Donet, McMillan & Trontz, P.A.**
Attorneys at Law
Suite 406, Continental Plaza, 3250 Mary Street, Coconut Grove, FL 33133
• Phone 305-444-0030 • Fax 305-444-0039 •
www.dmt-law.com